DECISION
{¶ 1} Relator, John E. Tackett, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying permanent total disability ("PTD") compensation, and to grant said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Noting that the commission is the expert on nonmedical factors, the magistrate found that it was within the commission's fact-finding discretion to accept the vocational expert's testing results, but to conduct its own analysis of the nonmedical factors. The magistrate further determined that the commission did not abuse its discretion when it relied upon relator's demonstrated ability to learn new skills through on the job training in concluding that relator was capable of sustained remunerative employment. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
 BRYANT and PETREE, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 5} In this original action, relator, John E. Tackett, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 4 
 Findings of Fact:
 {¶ 6} 1. In 1982, while employed as a pipefitter welder, relator sustained an industrial injury. On April 16, 1986, while performing a weight lifting exercise at a rehabilitation program, relator sustained another injury which is allowed for "L4-5 disc herniation."
 {¶ 7} 2. Relator subsequently underwent two back surgeries. The first surgery occurred March 17, 1987, and the second surgery occurred March 26, 2001.
 {¶ 8} 3. On October 8, 2004, relator filed an application for PTD compensation.
 {¶ 9} 4. On December 7, 2004, at the commission's request, relator was examined by James T. Lutz, M.D., who is board certified in occupational medicine. Dr. Lutz wrote:
 Reference is made to the Fourth Edition of the AMA Guides Revised in arriving at the following impairment assessment. For L4-5 disc herniation, with the claimant being status postfusion surgery, with evidence of radiculopathy: Utilizing table 72 on page 110 the claimant warrants a DRE category V, which equals a 25% whole person impairment.
 {¶ 10} 5. Dr. Lutz also completed a Physical Strength Rating form on which he indicated by checkmark that relator is physically capable of "light work."
 {¶ 11} 6. Under the "education" section of the application, relator indicated that he graduated from high school in 1961, and that he received special training at a "Welding School" in 1962.
 {¶ 12} 7. The PTD application form also poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "yes" response for all three queries. *Page 5 
 {¶ 13} 8. Penny Carr, a vocational expert, prepared a vocational report at relator's request. Carr conducted testing and a vocational interview on January 12, 2005. The Carr report states:
 EDUCATION:
 Mr. Tackett completed high school at Duval High in West Virginia. It was a rural school where there were no special education classes. He was a poor student and never learned to spell or read well. He remembers being given special tutoring in reading from the 10 through 12th grade. He received training as a welder in 1962. He has had no further academic or vocational up grade. He was not in the military.
 WORK HISTORY:
 Mr. Tackett has always worked as a pipefitter welder in the construction industry. He worked 25 years at this trade and has been a member of the Pipefitter's Local in West Virginia for 37 years. His job was primarily welding pipe and installations to hold pipe. He was required to do constant standing, lifting, handling and holding. He frequently lifted 50-100 pounds and did bending, stooping and reaching activities. He often had to climb ladders and scaffolding. He often had to stoop, kneel, and crawl. His job was physically strenuous. The DOT lists the job of Construction Welder as Skilled, performed at a Heavy physical demand level.
 * * *
 VOCATIONAL TESTING:
 The following vocational tests were administered to Mr. Tackett on 01/12/05. He understood the testing directions and invested maximum effort in each situation.
 WIDE RANGE ACHIEVEMENT TEST3:
 The Wide Range Achievement Test measures reading, spelling, and arithmetic skills. Scores are provided for each of these sub-test areas which can be used to compare the achievement level of one person to another in terms of grade level: *Page 6 
Mr. Tackett's performance on the WRAT indicates the following:
 Reading — 4th grade level.
 Spelling — 4th grade level.
 Arithmetic — 5th grade level.
 This test confirms Mr. Tackett's own report that his skills are well below his academic achievement level. He did no reading or writing as part of his work. He is able to [read] some of the newspaper by guessing at large (more than 6 letters) words. The claimant's current academic functioning would be a barrier to employment for jobs requiring written communication, record keeping or math proficiency.
 {¶ 14} 9. The Carr report concludes:
 Mr. Tackett has borderline literacy in academic skills. This limits him from performing work which involved clerical functions, accurate order taking, message taking or math functions.
 It is my opinion as a vocational rehabilitation expert with 28 years experience, that based on his physical limitations, age, education and work history that there are no jobs in the economy that Mr. John Tackett could perform. This includes sedentary and part-time work. Mr. Tackett should be considered totally and permanently disabled.
 {¶ 15} 10. Following a May 5, 2005 hearing, a Staff Hearing Officer ("SHO") issued an order denying relator's PTD application. The SHO's order explains:
 The injured worker was examined at the request of the Industrial Commission by Dr. Lutz with respect to the allowed condition in the claim. Dr. Lutz opined that the injured worker has reached maximum medical improvement considering the allowed condition and has a resulting 25% whole person permanent impairment. Dr. Lutz completed a Physical Strength Rating Form which he attached to his medical report wherein he indicated that the injured worker is capable of physical work activity at the light duty employment level. Light duty work is defined on that form as meaning the ability to exert up to 20 pounds of force occasionally, 10 pounds of force frequently, and a negligible *Page 7 
amount of force constantly. Physical demand for a light duty job is such that it requires walking or standing to a significant degree, or requires sitting most of the time but entails pushing and/or pulling arm or leg controls, and/or requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 The Staff Hearing Officer finds that the injured worker is capable of performing light duty employment based on the opinion of Dr. Lutz and in accordance with the definition of such work contained on the Physical Strength Rating Form completed by Dr. Lutz. The Staff Hearing Officer further finds that an individual that is found capable of performing light duty employment is also capable of sedentary employment.
 The injured worker submitted the vocational report of Ms. Carr for consideration. Ms. Carr performed academic testing on the injured worker and reported that he reads, writes, and performs mathematics at a 4th grade equivalent. Ms. Carr opined that the injured worker's current academic functioning would be a barrier to employment for jobs requiring written communication, record keeping or math proficiency.
 The Staff Hearing Officer finds that the injured worker was 61 years of age at the time he filed this application, has a formal high school education, and work experience as a pipe fitter welder and construction worker. The Staff Hearing Officer finds that the injured worker's age is not a factor which would impact on his ability to become re-employed. The Staff Hearing Officer further finds that the injured worker's age is a barrier to the injured worker in participating in programs aimed at acquiring new skills. The Staff Hearing Officer finds that the injured worker's education does not accurately reflect his academic functioning. Based on the testing results reported by Ms. Carr, the Staff Hearing Officer finds that the injured worker reads, writes, and performs basic mathematics at a 4th grade equivalent. Based on those testing results, the Staff Hearing Officer finds that the injured worker would be unable to compete for employment requiring written communication, record keeping or math proficiency. However, the Staff Hearing Officer finds that the injured worker demonstrated his ability to learn skills through training when he received special training to become a welder. The Staff Hearing Officer finds that the injured *Page 8 
worker would best learn new skills through on-the-job training. The Staff Hearing Officer further finds that the injured worker did not acquire transferable work skills as a result of his past work experience. Therefore, the injured worker would be limited to performing entry-level occupations. Considering the injured worker's age, academic functioning and work experience in conjunction with his ability to perform sedentary and light duty employment, the Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative employment.
 {¶ 16} 11. On December 7, 2005, relator, John E. Tackett, filed this mandamus action.
Conclusions of Law:
 {¶ 17} It is the magistrate's decision that this court deny relator's request for a writ of mandamus as more fully explained below.
 {¶ 18} For its threshold medical determination, the commission relied exclusively upon the report of Dr. Lutz, who found that relator is medically able to perform light work. Relator does not here challenge Dr. Lutz's report nor the commission's determination that he is medically able to perform light work. However, relator does challenge the commission's analysis of the non-medical factors.
 {¶ 19} The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on the non-medical issues. State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 20} Here, the commission, through its SHO, accepted Carr's testing results showing that relator performs academically at the fourth grade level. Based on Carr's testing results, the SHO concluded that relator "would be unable to compete for employment requiring written communication, record keeping or math proficiency." *Page 9 
 {¶ 21} While the SHO accepted Carr's testing results, the SHO did not accept Carr's analysis that relator is unable to perform sustained remunerative employment.
 {¶ 22} The SHO conducted her own analysis of the non-medical factors. Focusing on relator's work history as a welder, which required special training, the SHO found that relator had the ability to learn new skills through on-the-job training.
 {¶ 23} As the expert on the non-medical factors, it was within the commission's fact-finding discretion to accept Carr's testing results, but to conduct its own analysis of the non-medical factors.Jackson, supra. Moreover, it was well within the commission's discretion to place emphasis on relator's demonstrated ability to learn skilled employment as a welder, which, according to the Carr report, he performed for 27 years.
 {¶ 24} In State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, the court notes that the commission has the freedom to independently evaluate non-medical factors because non-medical factors are often subject to different interpretation. That is the case here.
 {¶ 25} Carr felt that relator's 27 years as a pipefitter welder left him with no transferable skills and an inability to return to that career. The commission, on the other hand, saw a demonstrated ability to learn new skills through on-the-job training that is an asset to re-employment. That relator's work history and special training can be viewed differently does not mandate a writ of mandamus. Ewart, supra.
 {¶ 26} Relator also criticizes the commission's treatment of relator's age, stating that the commission's order contains "internally inconsistent comments" about relator's age. (Relator's brief at 7.) *Page 10 
 {¶ 27} The commission found that relator's age of 61 years "is not a factor which would impact on his ability to become re-employed." However, the commission did find that relator's age "is a barrier to the injured worker in participating in programs aimed at acquiring new skills."
 {¶ 28} The commission's comments or findings regarding relator's age are not inconsistent as relator claims. The commission went on to explain that relator "would best learn new skills through on-the-job training" as opposed to participation in "programs" aimed at acquiring new skills. Thus, the commission explained how relator could overcome the so-called age "barrier" relating to formal skills training programs.
 {¶ 29} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1